# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 10-29218-CMB |
| | ) | |
| RICHARD C. CRAWFORD | ) | Chapter 7 |
| dba RC CRAWFORD PROPERTIES, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| BRIDGET M. GAUSSA | ) | Adv. No. 11-2172-CMB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD C. CRAWFORD, | ) | |
| | ) | |
| Defendant/Debtor. | ) | |

## MEMORANDUM OPINION

The matter before the Court is a Complaint Objecting to Dischargeability of Debt Pursuant to 11 U.S.C. §523 ("Complaint"). Bridget Gaussa ("Plaintiff") contends that the debt resulting from two loans she made to Richard Crawford ("Debtor") is nondischargeable pursuant to 11 U.S.C §523(a)(2), (4) and/or (6). For the reasons stated herein, this Court finds that Plaintiff did not meet her burden under the aforesaid provisions of §523. Accordingly, the debt is dischargeable.

1

I. **Statement of Facts**

The majority of the facts are undisputed.[1] The Debtor met the Plaintiff in late 2006, and the two formed a romantic relationship. The Debtor is the father of Plaintiff's two children. While in a relationship, the Plaintiff loaned the Debtor funds and the loans are the basis of the instant dispute.

Although the Court was not presented with evidence indicating the exact timing of events, around 2006 and 2007, the Debtor was undeniably facing financial difficulties. The Debtor had an ongoing business partnership, Crawford & Simonetta Properties, which incurred substantial losses. A piece of property in which the business and/or the Debtor had an interest was seized for dilapidation and back taxes. Around this time, the Debtor's personal home was foreclosed upon. Also, Debtor applied to several institutions for refinancing and additional loans for which he was ultimately denied. Clearly, the Debtor was facing financial hardship.

Sometime during this period of financial struggle, Debtor began to reach out to friends, family and investors for assistance. Plaintiff credibly testified that Debtor approached her and asked for loans to stabilize his "short-term" financial problems and assist with his business. The Plaintiff agreed to obtain loans on the Debtor's behalf.

On February 7, 2007, Plaintiff closed on a mortgage with PNC Bank for $23,750 ("PNC Mortgage") which represented the full equity available in her home. With an interest rate of 13.001%, the total amount repayable on the loan was projected to be $54,131.40. Of the $23,750 mortgage, $222 went to closing costs on the mortgage, $4,860 went to paying an

---

[1] Upon conclusion of the trial held on April 25, 2012, the parties were given thirty days to file a joint stipulation of the undisputed facts. By May 25, 2012, the parties had not yet met to discuss the joint stipulation and Debtor filed his own stipulation to meet the Court's deadline. After an extension, on June 11, 2012, Plaintiff filed her own stipulation, also without apparent agreement from the opposing party. Therefore, the Court does not consider either to be a joint stipulation of undisputed facts.

2

existing debt that Debtor owed to Plaintiff, and the remaining $18,618 was deposited into Debtor's bank account. A month later, in March 2007, Plaintiff took out another loan in her name for the benefit of the debtor. The second loan was with SHHS Federal Credit Union and was unsecured for $8,000 ("SHHS Loan"). With an interest rate of 10%, the total repayment was projected to be $10,194.60. Plaintiff credibly testified that Debtor knew she was taking the loans and that he approved the repayment terms of both loans, even if he was absent at the time Plaintiff actually signed the loan documents.

      Debtor agreed to pay all principal and interest due on the loans Plaintiff obtained for his benefit. He was to make the monthly payments on the loans until he was able to pay them off completely. Plaintiff did not sign any documents with the Debtor evidencing their agreement, and she believed his financial condition would improve enough to repay the loans. Plaintiff made the loans believing that she was assisting Debtor with his business and his short-term financial problems. Unfortunately, even with the proceeds of the loans, the partnership failed shortly after both loans were made in early 2007 and caused Debtor to begin a new business, RC Crawford Properties, LLC.

      Debtor and Plaintiff remained in a relationship for a few years after the loans were made to Debtor and had two children together. During this time, there was seemingly little pressure on the Debtor for repayment as he only made one payment of $565 towards the PNC Mortgage. However, when the relationship ended in 2010, the parties began to address the issue of the outstanding loans but were unable to come to an agreement. Plaintiff initiated suit against Debtor in the Allegheny County Court of Common Pleas seeking damages of $63,761.00 under the theories of breach of contract, unjust enrichment/quantum meruit, fraudulent/negligent misrepresentation and misappropriation/conversion. On December 31,

3

2010, shortly after the state action commenced, Debtor filed this voluntary Chapter 7 petition, thereby staying the state court proceeding.

Plaintiff filed this Adversary Complaint asserting that the debt is nondischargeable under §523(a)(2), (4) and/or (6) of the Bankruptcy Code. Debtor repaid only $565 of the $54,131.40 owed on the PNC Mortgage while Debtor made no payments on the $10,194.60 due under the SHHS Loan. Plaintiff originally sought a declaration of nondischargeability as to the entire amount of $63,761.00 claimed in her state court action. However, at trial, this amount was orally amended to $52,000. At the conclusion of the trial on April 25, 2012, each party was provided sixty days to file an optional memorandum but neither chose to do so. The matter, therefore, is ripe for decision.

## II.  Jurisdiction

Both parties accept that jurisdiction is proper. The Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(I).[2]

## III.  Legal Standard

An essential purpose of the Bankruptcy Code is to offer debtors relief "from the weight of oppressive indebtedness and provide them with a fresh start." *Insurance Co. of N. Am. v. Cohn* (*In re Cohn*), 54 F.3d 1108, 1113 (3d Cir. 1995). In order to achieve this objective, exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. *Id*. A fresh start is not assured though, as the bankruptcy system acts to balance

---

[2] However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

"allowing an 'honest but unfortunate debtor' a fresh start, while ensuring that a 'deceitful debtor' does not benefit from his or her own fraud." *Corso v. Walker* (*In re Walker*), 439 B.R. 854, 859 (Bankr. W.D. Pa. 2010), *aff'd,* 449 B.R. 838 (W.D. Pa. 2011) (citing *Field v. Mans*, 157 F.3d 35, 44 (1st Cir.1998)). In an action pursuant to §523, the creditor has the burden of proof by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

As Plaintiff seeks a finding of nondischargeability under §523(a)(2), (4) and/or (6), the Court will address each issue in turn.[3]

### A. Section 523(a)(2): False Pretenses, False Representation and Actual Fraud

Section 523(a)(2)(A) and (B) provides that a Chapter 7 debtor is not entitled to the discharge of any debt,

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> (B) use of a statement in writing—
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive.

The Plaintiff alleges that Debtor obtained the loan proceeds by false pretenses, false representation and/or fraud under §523(a)(2)(A), all of which require proof of intent by a preponderance of the evidence. *See Strominger v. Giquinto* (*In re Giquinto*), 388 B.R. 152, 165

---

[3] At trial the Debtor was asked a number of questions regarding items which were not included in his bankruptcy schedules. The Court notes that such evidence is typically presented in support of an objection to discharge pursuant to 11 U.S.C. §727, and the Plaintiff has not demonstrated the relevance for purposes of this action which seeks a determination of nondischargeability pursuant to 11 U.S.C. §523(a)(2), (4), and (6). An objection to discharge under §727 was neither raised nor proven by Plaintiff and will not be addressed herein.

(Bankr. E.D. Pa. 2008). While the Plaintiff condensed the arguments pursuant to §523(a)(2)(A) at trial, the Court will address each category of fraud individually while focusing on intent.

An action under the false pretenses category of §523(a)(2)(A) addresses implied misrepresentations or omissions by a debtor that foster a false impression. *Tropicana Casino & Resort v. August* (*In re August*), 448 B.R. 331, 349 (Bankr. E.D. Pa. 2011). Among the elements necessary to establish false pretenses for purposes of nondischargeability, the element of intent requires proof by a preponderance of the evidence that the debtor "knowingly and willingly" promoted an omission or implied misrepresentation. *Id*. at 350. The false pretense must be fostered by design and not result simply from inadvertence. *See Giquinto*, 388 B.R. at 174-75 (citing *Stevens v. Antonious* (*In re Antonious*), 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006)).

For purposes of §523(a)(2)(A), false representation requires, *inter alia*, proof by a preponderance of the evidence that "the debtor made the misrepresentation with the intention and purpose of deceiving the creditor[.]" *Walker*, 439 B.R. at 860. A false representation differs from a false pretense in that it requires an express misrepresentation, not just conduct that fosters a false impression. *See Wymard v. Ali* (*In re Ali*), 321 B.R. 685, 690 (Bankr. W.D. Pa. 2005). Further, the plain language of the statute provides some limitation:

> [T]he representation made by a debtor upon which a creditor predicates an action under §523(a)(2)(A) cannot, consistent with the express language of §523(a)(2)(A) & (B), pertain to said debtor's financial condition; representations regarding a debtor's financial condition are only actionable under §523(a)(2)(B), and then only if the same are made in writing.

*Telmark, LLC v. Booher (In re Booher)*, 284 B.R. 191, 200 (Bankr. W.D. Pa. 2002). Without a writing, a creditor cannot predicate an action under §523(a)(2) on representations the debtor made about his financial condition.

6

In order to establish actual fraud on the basis of failure to perform as promised, a plaintiff must prove that the debtor entered into an agreement with no intention of complying with the terms. *See First Baptist Church v. Maurer* (*In re Maurer*), 112 B.R. 710, 713 (Bankr. E.D. Pa. 1990); *GE Money Bank v. LaBovick* (*In re LaBovick*), 355 B.R. 508, 517 (Bankr. W.D. Pa. 2006) ("intent to repay only begins the analysis under §523(a)(2)(A)."). For example, "a contractor's failure to perform as promised, standing alone, gives rise to a case for breach of contract, not actionable fraud, misrepresentation or false pretenses under §523(a)(2)(A)." *Giquinto*, 388 B.R. at 166. If interpreted otherwise, almost any debt that arises out of a breach of contract would be nondischargeable. *Id.* (citing *Rezin v. Barr* (*In re Barr*), 194 B.R. 1009, 1019 (Bankr. N.D. Ill. 1996)). The determination of the intent to repay is a subjective one, and can be proven by a totality of the circumstances. *See Giquinto*, 388 B.R. at 165-66.

With the legal standard in mind, the Court, noting the heavy burden of proving intent and that exceptions to discharge are construed liberally in favor of the debtor, finds that Plaintiff failed to meet the preponderance of the evidence standard in proving the intent requirements for false pretenses, false representation or actual fraud under §523(a)(2)(A). The Plaintiff's evidence of Debtor's intent is comprised entirely of her own testimony and is counterbalanced by Debtor's own testimonial evidence. With little additional evidence presented and the Plaintiff bearing the burden of proof, she is unable to demonstrate the requisite intent for any action under §523(a)(2)(A) by a preponderance of evidence.

Plaintiff is unable to establish the false pretenses requirement of the Debtor "knowing and willingly" promoting a false impression. She provided no evidence showing that Debtor intentionally acted to foster any false impressions. Plaintiff's evidence in support of her allegations is her own repeated testimony that she would not have loaned funds to the Debtor if she knew the extent of his financial difficulties. She provided no evidence from which the

Court can find intent to deceive by the Debtor. Lacking a showing that the Debtor intentionally promoted a false impression, the failure of the partnership business or bad business judgment alone is insufficient to find nondischargeability. *See Maurer*, 112 B.R. at 713.

Similarly, Plaintiff's allegations that Debtor made false representations regarding his finances cannot meet the statutory requirements of §523(a)(2). Plaintiff presented no written record wherein Debtor made false representations about his financial condition upon which she relied in making the loans. The plain language of §523(a)(2) limits an action based on false representations regarding a debtor's financial condition to representations made in writing.

Plaintiff alleges false representation and/or actual fraud due to Debtor's failure to fulfill his promise of repayment. Although Debtor promised to repay the loans, the Debtor's financial condition worsened. This scenario occurs countless times in bankruptcy proceedings. Failure to repay a debt, without more, is simply insufficient to support a finding of nondischargeability pursuant to §523(a)(2). Further, Plaintiff's actual fraud claim fails because she offered no credible evidence that Debtor entered into the agreement without intent to repay. Of the limited evidence presented, it is undisputed that Debtor repaid $565 towards the PNC Mortgage. Admittedly it is a fraction of the approximately $63,000 owed, but it demonstrates at least an initial effort, albeit weakly, and intent to repay Plaintiff. Plaintiff provided no evidence that would lead to a finding that the loan proceeds were obtained by fraud.

The facts support nothing more than a finding that the Plaintiff was the unfortunate victim of Debtor's failed business venture. She is unable to prove the requisite intent by a preponderance of the evidence for any theory of relief under §523(a)(2)(A), and she has presented no written statement regarding the Debtor's financial condition for the purposes of §523(a)(2)(B). For the foregoing reasons, a declaration of nondischargeability pursuant to §523(a)(2) is not appropriate.

## B. Section (a)(4): Fraud or Defalcation While in Fiduciary Capacity, Embezzlement or Larceny

Plaintiff seeks, in the alternative, a finding of nondischargeability pursuant to §523(a)(4) which excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

For purposes of §523(a)(4), when a creditor alleges either fraud or defalcation, the creditor must also establish that the Debtor was acting in a fiduciary capacity. Plaintiff contends that their romantic relationship gave rise to a fiduciary responsibility. Ultimately, as previously discussed, Plaintiff is unable to prove the requisite intent for fraud, which makes it unnecessary to examine whether a fiduciary relationship existed or whether Debtor's actions occurred while in that capacity. Similarly, relief is improper under the theory of defalcation. Defalcation, as used in §523(a)(4), requires "some showing of affirmative misconduct" or a higher standard than negligence or innocent mistake. *See LaMacchia v. Tarbell* (*In re Tarbell*), 440 B.R. 668, 676 (Bankr. W.D. Pa. 2010) (citing *Chao v. Rizzi*, No. 06-711, 2007 U.S. Dist. LEXIS 57773, *9, 2007 WL 2317335, *3 (W.D. Pa. Aug. 8, 2007)). Plaintiff presented no credible evidence showing affirmative misconduct with respect to obtaining or using the loan proceeds. Therefore, any issues regarding a fiduciary relationship are rendered moot.

Plaintiff made little attempt to further her argument under embezzlement or larceny but encounters similar problems of intent under each analysis. Embezzlement is the "fraudulent appropriation of property by a person when such property has been entrusted, or into whose hands it has lawfully come." *Elliot v. Kiesewetter* (*In re Kiesewetter*), 391 B.R. 740, 748 (Bankr. W.D. Pa. 2008) (citing *Nelson v. Ishmael* (*In re Ishmael*), Adv. No. 07–287, 2008 Bankr. LEXIS 31, *22, 2008 WL 80040, *6 (Bankr.E.D.Pa. Jan.7, 2008)). Larceny differs in that it requires the initial appropriation to be wrongful. *See Kiesewetter,* 391 B.R. at 748.

9

Further, larceny requires intent to convert or deprive the owner. *Id*. Plaintiff cannot meet either standard. The first element of embezzlement requires fraudulent intent or deceit, which, as previously discussed, the Plaintiff did not prove by a preponderance of the evidence. *See In re Booher*, 284 B.R. at 213. Evidence of fraudulent intent with respect to Debtor's acceptance and use of the loan proceeds is lacking. Similarly, as to larceny, Plaintiff did not present any evidence that the Debtor acted with the requisite felonious intent to either convert the loan proceeds or deprive Plaintiff of the loan proceeds. Lacking these crucial intent requirements, Plaintiff is unable to meet the requirements for nondischargeability under §523(a)(4).

### C. Section 523(a)(6): Willful and Malicious Injury

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Plaintiff simply fails to demonstrate that the debt should not be discharged under this section.

*Kawaauhau v. Geiger* establishes that "willful", for nondischargeability purposes, requires a deliberate injury, not merely a deliberate act that leads to injury. 523 U.S. 57, 61 (1998). This interpretation of "willful" generally excludes instances such as a knowing breach of contract that would be nondischargeable under a broader interpretation of the word. *Id*. at 62. The Third Circuit has stated the test to be used for determining exceptions to discharge under §523(a)(6) is whether "the actor purposefully inflicted the injury or acted with substantial certainty that injury would result." *Conte v. Gautam* (*In re Conte*), 33 F.3d 303, 305 (3d Cir. 1994). The action of a debtor can rise to the level of malicious if the injury "was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." *Ali*, 321 B.R. at 693 (citing *Drudy v. Slomnicki* (*In re Slomnicki*), 243 B.R. 644, 649 (Bankr. W.D. Pa. 2000)).

Ultimately, Plaintiff is unable to prove her claim for willful and malicious injury. Without evidence of intent to inflict injury or wrongdoing on the part of the Debtor, the facts presented are more akin to a simple breach of contract. Courts have held numerous times that breach of contract alone will not bar discharge under §523(a)(6). *See Snoke v. Riso* (*In re Riso*), 978 F.2d 1151, 1154 (9th Cir. 1992) ("It is well settled that a simple breach of contract is not the type of injury addressed by §523(a)(6)."); *Viener v. Jacobs* (*In re Jacobs*), 381 B.R. 128, 138 (Bankr. E.D. Pa. 2008) ("§523(a)(6) is not intended to render nondischargeable debts arising from simple breaches of contract.").

The Court finds the analysis in *In re Burke* applicable and persuasive on this issue. *See Sandow v. Burke* (*In re Burke*), 416 B.R. 136 (Bankr. E.D. Pa. 2009). There an aggrieved party brought an adversary complaint under §523(a)(6) asserting debtor breached an oral promise to grant a life estate in property. *Id*. at 139-42. The court held that "[a] claim . . . for breach of an oral promise does not constitute an intentional tort and thus does not establish willful and malicious injury." *Id*. at 144. This Court finds the analysis in *Burke* applicable to Plaintiff's allegations pursuant to §523(a)(6). Plaintiff failed to establish that Debtor acted with an intent or substantial certainty that injury would occur. This case presents, at most, the breach of an oral promise. Without more, Plaintiff simply cannot prevail under §523(a)(6).

*[Remainder of Page Intentionally Left Blank]*

**IV.     Conclusion**

The Court finds, for the foregoing reasons, that the Plaintiff did not demonstrate that the debt owed to her by the Debtor is nondischargeable pursuant to §523(a)(2), (4), or (6). Therefore, Plaintiff's debt is dischargeable. An appropriate order will be entered.


Date: July 26, 2012                                                                    __/s/ Carlota M. Böhm_____
                                                                                                 Carlota M. Böhm
                                                                                                 United States Bankruptcy Judge


**CASE ADMINISTRATOR TO MAIL TO:**
  Office of the United States Trustee
  Rosemary C. Crawford, Esq., Chapter 7 Trustee
  George R. Farneth, II, Esq., Counsel to Plaintiff
  Bridget M. Gaussa, Plaintiff
  Richard G. Allen, Esq., Counsel to Debtor/Defendant
  Richard C. Crawford, Debtor/Defendant